**United States District Court**
**For the Northern District of California**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER MURPHY, *et al.*, individually and on behalf of all others similarly situated, | No. C 12-6228 SI |
| Plaintiffs, | **ORDER DISMISSING CASES WITHOUT LEAVE TO AMEND** |
| v. | |
| WELLS FARGO HOME MORTGAGE, *et al.*, | |
| Defendants. | |
| RICHARD D'ALESSIO, *et al.*, individually and on behalf of all others similarly situated, | No. C 13-0999 SI |
| Plaintiffs, | |
| v. | |
| WELLS FARGO HOME MORTGAGE, *et al.*, | |
| Defendants. | |
| PAUL McDERMED, *et al.*, individually and on behalf of all others similarly situated,, | No. C 13-1407 SI |
| Plaintiffs, | |
| v. | |
| WELLS FARGO HOME MORTGAGE, *et al.*, | |
| Defendants. | |

Defendants in these related cases have filed motions to dismiss the putative class action complaints. The motions have been fully briefed. Pursuant to Civil Local Rule 7-1(b), the Court finds that these matters are appropriate for resolution without additional argument and VACATES the hearing scheduled for August 30, 2013. Having considered the parties' papers, and for good cause shown, the Court DISMISSES each action without leave to amend, for the reasons discussed below.

**BACKGROUND**

The plaintiffs in each of these putative class actions allege that they are class members in another, separate case, *In re: Wachovia Corp. "Pick-A-Payment" Mortgage Marketing And Sales Practices Litigation*, Case No. M:09-cv-2015-JF (N.D. Cal.), pending before Judge Jeremy Fogel.[1] That MDL litigation represented the consolidation of various putative "Pick-A-Payment" class actions filed in various district courts around the country, including the first-filed action filed in this District, *Mandrigues v. World Savings, Inc., et al.*, Case no. 5:07-cv-4497-JF (N.D. Cal.). The MDL litigation settled; a written class action settlement agreement ("MDL-SA") was approved by Judge Fogel, and judgment was entered.

The plaintiffs in these actions (represented by the same lawyers who represented the plaintiffs' classes in the MDL) now allege that the defendants in the MDL – which are also the defendants here – breached the terms of the MDL settlement agreement. Rather than, or in addition to, filing an enforcement action in *Mandrigues* or the *In re: Wachovia Corp.* MDL (collectively "the underlying action"), plaintiffs have filed three new class action complaints seeking injunctive and declaratory relief on claims that defendants are in breach of MDL-SA contract.

On December 10, 2010, defendants and many of the same named plaintiffs here, on behalf of themselves and all settlement class members, executed the MDL-SA to fully resolve and compromise claims arising out of the origination of "Pick-A-Payment" mortgage loans. Pursuant to the MDL-SA, defendants paid $50 million for the benefit of all borrowers who, from August 1, 2003 to December 31, 2008, obtained a Pick-A-Payment loan from World Savings Bank, FSB, that was secured by their primary residence. Defendants also agreed to make a loan modification program available to certain settlement class members. The MDL-SA created three settlement classes, Class A, Class B, and Class C. All settlement classes were entitled to some cash payment, but only Class B and Class C members were eligible for loan modifications; Class A members were excluded from the modification program because they had previously received a loan modification. Class B consisted of classmembers who still

---

[1] The parties have requested that the Court take judicial notice of numerous documents connected with their motions for which judicial notice is appropriate. Those requests are GRANTED. *See* Case No. 12-6228, Docket Nos. 30, 33, 36; Case No. 13-0999, Docket Nos. 18, 31, 48; Case No. 13-1407, Docket No. 14. The facts recited herein come from these documents.

2

had their Pick-A-Payment loans and were not in default, while Class C consisted of those who still had their Pick-A-Payment loans and were in default.

All of the three new would-be class actions pending before this Court arise out of some alleged impropriety in the administration of the MDL-SA's loan modification program:

--Plaintiffs in the *Murphy* Action (Case No. 12-6228) allege that defendants breached the MDL-SA by applying an inaccurate definition of "imminent default" in denying plaintiffs' loan modification applications.

--Plaintiffs in the *D'Alessio* Action (Case No. 13-0999) allege that the appraisal method defendants use in evaluating borrowers for modifications breaches the MDL-SA by improperly inflating home values, thereby causing unwarranted loan modification denials.

--Plaintiffs in the *McDermed* Action (Case No. 13-1407), all of whom had previously received loan modifications, allege that defendants have improperly denied them access to additional loan modifications. Notwithstanding the fact that their prior receipt of a loan modification makes them ineligible for additional modifications as Class A settlement class members, the *McDermed* plaintiffs contend that they acquired a right to loan modifications because defendants mailed them multiple, conflicting class notices. Upon realizing the mistake, defendants established a toll-free telephone hotline, and class counsel and defendants' counsel agreed on a customer service script to explain the mailing of multiple notices. The *McDermed* plaintiffs allege that the telephone script's imprecise language modified the MDL-SA, making them eligible for loan modifications to which they have been denied.

On December 7, 2012, numerous MDL-SA classmembers, including many of the named plaintiffs in the three actions pending here, filed an "Ex Parte Request for a Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction" ("TRO") in the underlying action. Plaintiffs sought to "enjoin Defendants from foreclosing, selling, or attempting to sell...any property owned by Settlement Class B and Class C Members who have applied for a loan modification but has not to date been given a loan modification pursuant to the [MDL-SA], until Lead Counsel has had the opportunity to review loan modification denials." *D'Alessio* Def. RJN, Ex. B (Case No. 13-0999, Docket No. 18-2 at 51) ("TRO Brief"). Judge Fogel denied the TRO application, set a hearing date for the motion for preliminary injunction, and requested additional briefing. The motion for preliminary injunction remains pending while the parties continue to brief the underlying issues.

The core issues presented by the *Murphy*, *D'Alessio*, and *McDermed* complaints in this Court were litigated in the TRO briefing and continue to be litigated in the parties' preliminary injunction briefing in the underlying action. In particular, Judge Fogel's December 21, 2012 Order Denying the Application for a Temporary Restraining Order expressed skepticism that plaintiffs could prevail on

3

their imminent default breach theory and their appraisal calculation breach theory. *See D'Alessio* Def. RJN, Ex. E (Docket No. 18-5 at 6). Plaintiffs have revised those theories and both issues remain alive as the parties continue briefing on the preliminary injunction. *See D'Alessio* Def. RJN, Ex. C ("PI Brief") (Docket 18-3 at 11-16, 17-20). While the December 21, 2012 Order did not address the inadvertent class notice mailing breach issue raised by the *McDermed* plaintiffs here, the Court observes that plaintiffs have argued in their preliminary injunction briefing that Wells Fargo breached the MDL-SA "by denying loan modifications to Settlement Class Members to whom it sent Settlement Class B and C notices because they still have their Pick-a-Payment loans, on the grounds that they actually are Settlement Class A." *Id*. (Docket 18-3 at 24). Moreover, the Court notes that three of the six named plaintiffs in the *McDermed* Action – Paul McDermed, Julie McDermed, and Sharon ("Sherri") Goldfinch – are parties to the enforcement proceedings pending in the underlying action, including the preliminary injunction motion.

On December 7, 2012, the very same class counsel seeking a temporary restraining order in the underlying action filed the complaint in the *Murphy* Action, along with a motion to relate the *Murphy* Action to the underlying action. On February 1, 2013, Judge Fogel declined to relate the *Murphy* Action to the underlying action, "for the reasons stated on the record at the hearing on January 31, 2013." *D'Alessio* Pl. RJN, Ex. C (Docket No. 31-1 at 90). Plaintiffs contend that Judge Fogel's refusal to relate the cases proves that the *Murphy* Action is distinct from the simultaneous enforcement proceedings in the underlying action. Defendants contend that Judge Fogel's refusal to relate had to do with scheduling concerns, not whether the actions are duplicative.

Class counsel in the underlying action filed the complaint in the *D'Alessio* Action on March 4, 2013, and the complaint in the *McDermed* Action on March 28, 2013. This Court subsequently related the *D'Alessio* and *McDermed* Actions to the *Murphy* Action. Defendants have moved to dismiss each action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. In the *Murphy* and *D'Alessio* Actions, defendants contend, *inter alia,* that the complaints should be dismissed because they violate the rule against claim splitting in that they are duplicative of the injunction proceedings in the underlying action. Defendants in the *McDermed* Action raise no claim splitting concerns, and instead contend that plaintiffs fail to establish any cognizable claim on the facts alleged.

4

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## DISCUSSION

**1.  Federal Doctrine on Claim Splitting.**

Defendants argue that the complaints in the *Murphy* and D'*Alessio* 0Actions should be dismissed because they duplicate issues being litigated in the underlying action. Defendants also vigorously dispute the merits of plaintiffs' claims and have filed numerous motions in these actions. Because the Court finds that dismissal based on duplication is appropriate for all three actions, the Court does not reach the merits or rule on any of the other pending motions.

The doctrine against claim splitting provides that a party is "not at liberty to split up his demand,

5

and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fail. There would be no end to litigation if such a practice were permissible." *United States v. Haytian Republic,* 154 U.S. 118, 125 (1894) (quoting *Stark v. Starr*, 94 U.S. 477, 482 (1876)). The "main purpose behind the rule preventing claim splitting is 'to protect the defendant from being harassed by repetitive actions based on the same claim.'" *Clements v. Airport Authority of Washoe County*, 69 F.3d 321, 328 (9th Cir. 1995).

A district court retains broad discretion to control its docket and may exercise its discretion to dismiss a duplicative later-filed action, to stay that action pending resolution of the previously filed action, to enjoin the parties from proceeding with it, or to consolidate both actions. *See Adams v. California Dept. of Health Services*, 487 F.3d 684, 688 (9th Cir. 2007) (citations omitted). To determine whether a suit is duplicative, the Ninth Circuit borrows from the test for claim preclusion. *Id.* Under claim preclusion doctrine, the Court examines whether the causes of action and relief sought, as well as the parties or privies to the action, are the same. *Id.* at 689. The first question entails a further four-prong transaction test that asks: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. *Id.* (citing *Costantini v. Trans World Airlines,* 681 F.2d 1199, 1201-02 (9th Cir. 1982). "The last of these criteria is the most important." *Costantini*, 681 F.2d at 1202.

### A.  *Murphy* and *D'Alessio* Actions.

The *Murphy* Action is plainly duplicative of the ongoing preliminary injunction proceedings in the underlying action. The core issue in the *Murphy* Action is whether defendants' denials of loan modifications based on its understanding of "imminent default" violated the MDL-SA. According to the *Murphy* amended complaint, plaintiffs seek a "declaration that Defendants breached the [MDL-SA] by imposing a hardship standard that is not supported by the [MDL-SA] and failing to consider net income in the *imminent default* analysis." *Murphy* Compl. ¶ 13. (emphasis added). Plaintiffs also seek to enjoin defendants from denying loan modifications based on "an inapplicable hardship standard and

6

without properly considering Settlement Class Member's hardships and net income in their imminent default analyses." *Id.* In their December 7, 2012, application to Judge Fogel for a temporary restraining order, plaintiffs sought to restrain the same conduct on nearly the same basis – defendant's failure to modify loans based on its flawed understanding and application of the term "imminent default." There plaintiffs argued that borrowers were in imminent threat of default if they could not afford a monthly payment equal to 31% of their gross monthly income. After Judge Fogel denied the application and converted it to a preliminary injunction motion, plaintiffs' imminent default theory changed. Plaintiffs in the underlying action now seek to enjoin modification denials for borrowers who are in imminent danger of default as defined by a hardship standard similar to the hardship standard advanced in the *Murphy* complaint. In other words, plaintiffs seek to enjoin the same alleged breach of contract – failure to consider hardship in conducing imminent default analyses – in both the *Murphy* Action and in the preliminary injunction being litigated in the underlying action.

The *D'Alessio* Action also plainly duplicates issues being adjudicated in the underlying action. As in the *Murphy* Action, plaintiffs and defendants in the *D'Alessio* action are all parties to the MDL-SA and many of the named plaintiffs here are also contesting defendants' adherence to the MDL-SA in the underlying action. The *D'Alessio* complaint alleges that defendants have breached the MDL-SA by using an unauthorized valuation method which improperly inflates the values of class members' homes. Home valuations figure into the calculations defendants use in determining modification eligibility and amount. Thus, as a result of these inflated home values, some class members receive less favorable modifications or no modifications at all. Plaintiffs seek declaratory judgment that defendants' home valuation method breaches the contract, an injunction prohibiting defendants from continuing to use that method, and an order requiring defendants to use plaintiffs' preferred method for home valuation. In their application for a TRO, plaintiffs made precisely the same argument – that defendants were in breach of the MDL-SA by "using inflated property valuation numbers derived from automated valuation models, instead of using independent appraisals, which has resulted in the skewing of . . . determinations on whether to grant or deny a modification." TRO Brief at 8 (Docket No. 18-2 at 24). Similarly, in briefing on the preliminary injunction in the underlying action, plaintiffs contend that "Wells Fargo is using highly *unreliable*, wildly varying, and inflated property valuations that skew [the] results against

7

modifications" for class members. PI Brief at 12 (Docket No. 18-3 at 17). As a result, they allege, numerous class members have been denied modifications. Accordingly, as in the *D'Alessio* Action, plaintiffs in the underlying action seek to enjoin defendants from continuing to take adverse actions against class members based on this valuation method.

In fact, plaintiffs do not seriously dispute that the issues they have raised in the *Murphy* and *D'Alessio* Actions are precisely the same as the issues pending in the underlying action or that the parties are in both courts are identical. In their TRO application, plaintiffs acknowledged that they simultaneously filed the *Murphy* Action seeking injunctive relief and damages arising out of the *very same* "improper conduct" alleged in the TRO application. TRO Brief at 3 (Docket No. 18-2 at 19). The only difference between the *Murphy* Action and the TRO application, plaintiffs admit, was that the TRO, if granted, could provide emergency relief for those class members in "immediate and serious danger" of losing their homes. *Id.*

Conceding this overlap, as they must, plaintiffs argue that an exception to the bar against claim splitting applies where the party against whom the bar is urged does not have a full and fair opportunity to litigate his claim in the other action. *See Clements v. Airport Auth. of Washoe Cty.*, 69 F.3d 321, 327-28 (9th Cir. 1995). Plaintiffs nowhere explain how the underlying action does not give them a full and fair opportunity to litigate the imminent default or home valuation issues. In fact, the underlying action has involved numerous rounds substantive briefing in addition to a referral to a magistrate judge for fact findings that directly bear on defendants' adherence to the MDL-SA. *See* Case No. M:09-cv-2015-JF (N.D. Cal.), Docket No. 507 (Mag. Judge Report and Recommendation Re: Loan Modification Statistics). Instead, plaintiffs contend only that by refusing to relate the *Murphy* Action to the enforcement proceedings, Judge Fogel understood that the underlying enforcement action would not afford plaintiffs a full and fair opportunity to litigate their claims. In effect, the Order declining to relate, in plaintiffs' view, impliedly found that the claim splitting was permissible and gave a green light to the filing of additional lawsuits on the same issues, including the *D'Alessio* Action. Moreover, by continuing to litigate the enforcement proceedings in the underlying action, plaintiffs argue that defendants acquiesced to these successive actions.

The Court disagrees. Simply because a district judge determines that two cases are "related" for

the narrow purposes of applying the local rule does not mean that the later-filed case cannot be said to violate the doctrine against claim splitting. The parties offer different interpretations of the reasoning for Judge Fogel's refusal to relate the *Murphy* Action to the underlying action. That dispute is of no moment. Whatever the reasoning, Judge Fogel's refusal to relate the cases pursuant to Civil Local Rule 3-12 did not grant plaintiffs license to file otherwise duplicative lawsuits. A judicial decision not to relate or even consolidate two similar actions does not automatically sanction an otherwise improper splitting of claims. In fact, a district judge may very well relate or consolidate two actions and subsequently dismiss the later-filed action as barred by the doctrine against claim splitting if it turns out to be duplicative of the first action.

The cases cited by plaintiffs compel no different result. Plaintiffs rely on *Delew v. Wagner*, 143 F.3d 1219 (9th Cir. 1998) and *RA Med. Sys. Inc. v. PhotoMedex, Inc.,* 373 Fed. Appx. 784 (9th Cir. 2010) for the proposition Judge Fogel's refusal to relate the *Murphy* Action to the underlying action precludes application of the claim splitting bar. These cases do not so hold. In *Delew*, a state court refused to allow plaintiffs to amend a wrongful death action to add a newly discovered Section 1983 claim, insisting instead that plaintiffs file a separate lawsuit for the 1983 claim. After doing just that, the federal district court held that the separate 1983 claim was improper claim splitting. The Ninth Circuit reversed, finding that plaintiffs could not be penalized for claim splitting where they were effectively forced to split their claims by the state court. The Ninth Circuit specifically "question[ed] the soundness of that [state court] decision," noting that it had "no power to correct it and must accept the unique posture" of the case. *Id.* at 1221-22.

The instant actions are quite different. Unlike *Delew*, where plaintiffs split two *different* claims into two different actions, plaintiffs here have split the *same* claims among two different actions. Rather than being prevented from adjudicating that claim in the underlying action, plaintiffs have asked two different judges to rule on the merits of the very same claim – that defendants are not adhering to the MDL-SA. Unlike *Delew*, where the state court refused to entertain the 1983 claim, plaintiffs' duplicative claims are in fact being adjudicated in the underlying action. Moreover, although there was a motion to relate, there was never a formal attempt at consolidating the *Murphy* Action, as there was in *Delew*. More important, plaintiffs here have not been forced to bring separate complaints; plaintiffs

9

chose to bring duplicative suits even though the underlying court was actively adjudicating their dispute. Thus, *Delew*'s holding, which is limited to it's "unique posture," does not excuse plaintiffs here from the claim splitting bar. *Delew*, 143 F.3d at 1222.

*RA Med. Sys. Inc. v. PhotoMedex, Inc* is similarly inapplicable. There, PhotoMedex sued RA Med. in federal court first, and RA Med. subsequently filed a second suit against PhotoMedex in state court. PhotoMedex removed the second suit to federal court, moved to consolidate it with the first, and asserted additional counterclaims which it claimed to have discovered after it filed the first federal suit. RA Med. opposed the consolidating of the second suit with the first – in effect, acquiescing to the split – and the district court denied the motion to consolidate. Thereafter, the district court in the second federal suit dismissed PhotoMedex's newly added counterclaims as barred by the doctrine against claim splitting. PhotoMedex appealed and the Ninth Circuit reversed, holding that the district court's refusal to consolidate the actions, in effect, forced PhotoMedex to litigate the counterclaims in the second action. *RA Med.*, 373 Fed. Appx. at 787-788.

The Ninth Circuit's holding in *RA Med.* does not insulate the *Murphy* and *D'Alessio* Actions from the claim-splitting bar, as plaintiffs suggest. Unlike *RA Med.*, where PhotoMedex brought new counterclaims in a second action that it, arguably, could have brought in the first action, here plaintiffs propose to present the very same claims to two different judges for adjudication. This is not a case where plaintiffs have been judicially stifled from presenting newly discovered claims in the underlying action. On the contrary, plaintiffs here were quite aware of their MDL-SA breach claims when they sought the TRO, and chose to simultaneously raise those claims to two different judges in two different formats – a TRO application and preliminary injunction motion in the underlying action and a complaint for declaratory and injunctive relief here. These duplicative actions are not condoned by *RA Med.*, where like *Delew*, the Ninth Circuit refused to bar new and different claims in a second action, where a party was judicially foreclosed from asserting them in the original action.

Nor can it be said that defendants waived their right to raise the claim splitting issue by continuing to participate in the underlying enforcement action. Defendants raised the issue at the first possible opportunity in these cases – the motion to dismiss. However the issue may have been approached in the underlying proceeding during the dispute over whether the cases were related, the fact

10

is that in these separately filed actions, defendants raised the issue at their earliest opportunity.

The causes of action and relief sought in the *Murphy* and *D'Alessio* Actions are virtually identical to what plaintiffs are pursuing in the underlying action. Plaintiffs here seek to adjudicate the same rights and interests, and rely on the same evidence and nucleus facts as the underlying action. By filing these separate complaints, plaintiffs have invited this Court to assume the risk that its decisions may be inconsistent with Judge Fogel's decisions on the same issues. This Court declines that invitation. Given the availability and active pursuit of these claims in the original forum, the only appropriate resolution here is dismissal without leave to amend of these duplicative actions.

### B. The *McDermed* Action.

Plaintiffs in the *McDermed* Action are class members bound by the MDL-SA. They allege that defendants mailed them multiple and conflicting class notices. The MDL-SA provided for the settlement administrator to mail notices to potential class members within thirty days after the court in the underlying action provided preliminary settlement approval on December 16, 2010. After mailing these notices, plaintiffs allege that the settlement administrator discovered that Wells Fargo had listed some class members as being a Class A member and also a Class B or Class C member. Thus, some 66,000 class members are alleged to have received both a Class A notice and a notice intended for Class B or Class C, which defendants contend was inadvertent.

The parties to the MDL-SA, upon discovering the mailing issue, negotiated and approved a customer service script that would be used by the toll-free telephone operators to answer inquiries from potential class members who received multiple notices. Plaintiffs contend that "[i]n light of the potential confusion, Class Counsel and Counsel for Defendants agreed that those [class members who received two notices] would be eligible to apply for [] loan modification." *McDermed* Compl. ¶ 52. Plaintiffs allege that the agreed-upon customer service script reflects the parties' agreement that even those Class A members who would otherwise be ineligible for modifications, were automatically converted to Class B or Class C status because of the mailing confusion. Accordingly, the *McDermed* complaint seeks declaratory and injunctive relief on claims for breach of contract and promissory estoppel. Defendants dispute plaintiffs' interpretation of the script, and assert that the script in no way modified the MDL-SA

11

1  to give this subset of Class A members new rights to seek modifications.

2  Although the parties in the *McDermed* Action have not raised the claim splitting issue in their
3  papers, the Court has reviewed that Action and finds that it too is barred by the doctrine against claim
4  splitting. The claim splitting bar prevents duplicate cases even if the earlier-filed action has not reached
5  a conclusion or been reduced to a final judgment. *Cook v. C.R. England, Inc.*, 2012 WL 2373258, at
6  *3 (C.D. Cal. June 21, 2012) (citing *Comm'r v. Sunnen*, 333 U.S. 591, 597 (1948)). Moreover, the
7  claim-preclusion test does not just bar claims that actually duplicate those asserted in a prior action but
8  also those which could have been asserted, whether they were or not. *Id.* at *8 (citing *Ross v. Int'l Bhd.
9  of Elec. Workers*, 634 F.2d 453, 457 (9th Cir.1980)).

10  Although it appears from the record in the underlying action that the parties are not actively
11  disputing the multiple mailing issue, plaintiffs have asserted in their preliminary injunction briefing that
12  Wells Fargo breached the MDL-SA "by denying loan modifications to Settlement Class Members to
13  whom it sent Settlement Class B and C notices because they still have their Pick-a-Payment loans, on
14  the grounds that they actually are Settlement Class A." PI Brief at 19 (Docket 18-3 at 24). This
15  assertion is quite similar to the *McDermed* plaintiffs' claims that though they are Class A members, they
16  were converted to Class B or C. Moreover, the Court notes that three of the six named plaintiffs in the
17  *McDermed* Action – Paul McDermed, Julie McDermed, and Sharon ("Sherri") Goldfinch – are parties
18  to the preliminary injunction motion.

19  Accordingly, the Court finds that the *McDermed* Action falls squarely within the claim splitting
20  bar. The parties to this Action could have – and still may – assert these issues in the underlying action,
21  rather than subject defendants to repetitive, potentially endless lawsuits arising out of the same or similar
22  theories of non-adherence to the MDL-SA. Moreover, given that a similar claim has been raised in the
23  preliminary injunction briefing, there is a risk that this Court may issue inconsistent with the underlying
24  action. In view of these factors, the Court finds that dismissal without leave to amend is also appropriate
25  for the *McDermed* Action.

26

27  **2.    Scope of the Court's Continuing Jurisdiction in the Underlying Action.**
28  In addition to the claim splitting prohibition, each complaint must be dismissed because this

Court's consideration of any of them would violate the parties' contract. Plaintiffs and defendants in all three actions are parties to the MDL-SA. That contract contains very specific provisions that govern enforcement disputes. In particular, the parties agreed to "Dismiss this Lawsuit with prejudice," except "as described herein" to:

> [p]reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including the Defendants and all Settlement Class Members, to administer, supervise, construe, and enforce this Agreement in accordance with its terms for the mutual benefit of the Parties, but without affecting the finality of the Judgment . . .

*D'Alessio* Def. RJN, Ex. A, MDL-SA at 56-57 (Docket No. 18-1 at 57-58). By its plain language, the underlying action remains open for the limited purpose of resolving disputes over the parties' adherence to the contract. Judge Fogel's final approval order similarly stated, "[t]his Court will retain continuing jurisdiction to interpret and enforce the settlement agreement." *See* Case No. M:09-cv-2015-JF (N.D. Cal.), Docket No. 207 at 4 (Order Granting Final Approval of Class Action Settlement). The inclusion of such a jurisdictional clause in a class action settlement agreement is fairly unremarkable. What is remarkable, however, is counsels' decision to file entirely new putative class action complaints in order to compel defendants' adherence to the contract, rather than, or in addition to, litigating the same issues in the underlying action. Whereas plaintiffs contend that they may not have a full and fair opportunity to litigate enforcement issues in the underlying action, their alternative – to file entirely new lawsuits each time a class member is dissatisfied with Wells Fargo's performance – goes too far.

Not only is this belt-and-suspenders approach inconsistent with federal law on claim splitting, it is also inconsistent with the parties' contract. The MDL-SA preserves the original court's jurisdiction for the limited purpose of resolving enforcement disputes. By its plain language, the contract provides an exclusive mechanism for the resolution of disputes – a proceeding in the *original* action. The parties explicitly contracted that the original action, which was dismissed with prejudice for all other purposes, would remain open "to administer, supervise, construe, and enforce this Agreement." The contract does not grant the parties an unlimited right to bring entirely new dispute actions, as plaintiffs now propose to do. Instead, the parties agreed to limit their access to judicial review of contract adherence to the original action.

There is no question that the *Murphy*, *D'Alessio*, and *McDermed* Actions are covered by the MDL-SA's jurisdictional clause: each Action seeks judicial review of disputes involving Wells Fargo's

13

adherence to the MDL-SA. Thus, the Court finds that the MDL-SA prevents it from adjudicating these matters. In addition to the improper claim splitting discussed above, deference to the parties' contract requires that this Court dismiss these actions with prejudice.

**CONCLUSION**

For the foregoing reasons, the Court DISMISSES the *Murphy*, *D'Alessio*, and *McDermed* complaints without leave to amend..

**IT IS SO ORDERED.**

Dated: August 19, 2013

SUSAN ILLSTON
United States District Judge